# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| WANDA RENEE TITUS-WILLIAMS | : | CIVIL ACTION |
| --- | --- | --- |
| v. | : | NO. 19-4743 |
| JAMES SCHIRG, *et al.* | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                **January 24, 2020**

Congress requires an employee challenging alleged discrimination in her work place to exhaust remedies before the Equal Employment Opportunity Commission through the filing of an administrative claim before suing her employer in federal court. While many employees pursue this administrative process without counsel, Congress still requires they exhaust the appropriate administrative process including identifying the claim or facts allowing the administrative agency to properly investigate the alleged discrimination. The administrative agency cannot guess at a claim simply because of the employee's gender, age, race, or disability. The employee must identify the type(s) of claim she wishes to pursue. When as today, the employee does not offer facts or check the box on the opening form evidencing gender discrimination while exhausting her administrative remedies but now attempts to bring gender discrimination claims here, we must dismiss her gender discrimination claims with prejudice for failure to exhaust her administrative remedies as to gender discrimination. We must also dismiss her claims under the Family Medical Leave Act for failure to state a claim but with leave to timely amend if she can plead facts of her employer's interference with, or retaliation for, her exercise of rights under the Family Medical Leave Act.

## I. *Pro se* alleged facts.

The Southeastern Pennsylvania Transportation Authority (SEPTA) hired Ms. Titus-Williams as a bus operator on December 4, 2000.[1] Ms. Titus-Williams explains she began to experience significant back and neck pain over the course of her employment.[2] She explains an on-the-job accident on April 6, 2016 aggravated her back and neck pain resulting her use of "a significant amount of sick time so that she could treat her injuries."[3] Ms. Titus-Williams does not provide us with the dates she used this sick time and whether any "sick time" qualified under the Family Medical Leave Act ("FMLA").[4]

On January 18, 2018, SEPTA's Director of Surface Transportation James Schirg told Ms. Titus-Williams she exhausted all sick benefits and additional call offs not covered by the FMLA "will result in immediate termination of employment with the Authority."[5] Ms. Titus-Williams contends she applied for intermittent leave under the FMLA to treat her injuries.[6] We do not know when Ms. Titus-Williams applied for FMLA leave.

On March 12, 2018, a car hit Ms. Titus-Williams' bus while on the job aggravating a strain or tear to a disc in her back and neck.[7] On June 6, 2018, the Pennsylvania Department of Labor and Industry Bureau of Workers' Compensation denied Ms. Titus-Williams' workers compensation claim.[8] On June 26, 2018, Director Schirg told Ms. Titus-Williams because the Workers' Compensation Bureau denied her "Injured on Duty" claim from the March 12, 2018 accident, she would be fired if she failed to return to work on July 9, 2018.[9] Director Schirg advised Ms. Titus-Williams she exhausted all of her sick benefits related to her back injury and must return to work.[10]

Six days later, on July 2, 2018, Alyssa Weisensee of SEPTA's Leave Administration Unit advised Ms. Titus-Williams of the status of her "intermittent FMLA leave."[11] Ms. Weisensee

2

advised Ms. Titus-Williams SEPTA approved her FMLA leave from January 22, 2018 until July 21, 2018.[12] The same day, July 2, 2018, Ms. Weisensee provided Ms. Titus-Williams with the identical letter, with the exception of a different "Leave Number"; one letter refers to Leave Number 281251 and the other refers to Leave Number 281246.[13] We have no explanation of the significance, if any, of the different Leave Numbers, but both approved intermittent FMLA leave from January 22, 2018 to July 21, 2018. Both of Ms. Weisensee's letters advised Ms. Titus-Williams if she "still needed FMLA for this reason and have available time remining, [she] will be required to furnish updated supporting documentation" and to contact a WorkPartners Intake Line to "request a new intermittent leave."[14] We do not know whether Ms. Titus-Williams requested new intermittent FMLA leave.

We assume Ms. Titus-Williams' intermittent FMLA leave began four days after Director Schirg's January 18, 2018 letter advising Ms. Titus-Williams she exhausted her sick leave and she needed FMLA leave to continue missing work. We do not know if Ms. Titus-Williams received either, or both, of Ms. Weisensee's July 2, 2018 letters before she underwent back surgery around July 3-4, 2018.[15]

Notwithstanding Ms. Weisensee's July 2, 2018 letters, Director Schirg fired Ms. Titus-Williams on July 9, 2018 "for expiration of sick leave."[16] SEPTA fired her during her approved FMLA leave, set to expire on July 21, 2018. Ms. Titus-Williams claims to have filed a charge with the Equal Employment Opportunity Commission (EEOC) or her Equal Employment Opportunity counselor on April 30, 2019,[17] 294 days after Director Schirg fired her.[18] On May 3, 2019, her Union told Ms. Titus-Williams it decided not to pursue arbitration in her case because it would not be successful "given the corroborating evidence for exhausting of sick leave."[19]

3

Ms. Titus-Williams formally filed charges with the EEOC and the Pennsylvania Human Relations Commission on July 23, 2019 for discrimination based on disability.[20] She did not check the box or the open form for discrimination based on sex.[21] Two days later, the EEOC mailed A Notice of Right to Sue Letter to Ms. Titus-Williams informing she had ninety days to file a lawsuit.[22] On October 11, 2019, Ms. Titus-Williams sued SEPTA alleging illegal termination, disability discrimination, and gender discrimination under Title VII of the 1964 Civil Rights Act, the Americans with Disabilities Act (ADA), and the Family Medical Leave Act.

## II. Analysis[23]

SEPTA moves to dismiss arguing Ms. Titus-Williams: (1) failed to exhaust her administrative remedies for her Title VII gender-based discrimination claim by failing to include it in her administrative charge; and (2) fails to plead facts in support of her Family Medical Leave Act claim.[24] Ms. Titus-Williams opposes dismissal arguing: (1) she exhausted administrative remedies on her Title VII gender discrimination claim because it is within the scope of the EEOC charge and (2) she plausibly pleads a claim for FMLA interference and retaliation. We disagree with Ms. Titus-Williams and dismiss her gender discrimination claim with prejudice for failure to exhaust and dismiss her FMLA claim without prejudice to timely amend.

### A. Ms. Titus-Williams did not exhaust her gender discrimination claim.

SEPTA argues we must dismiss Ms. Titus-Williams' gender discrimination claim with prejudice because she failed to exhaust her administrative remedies before the EEOC.[25] Ms. Titus-Williams did not check the gender discrimination box when filing her charge of disability discrimination with the EEOC and did not allege facts in her EEOC filing suggesting she suffered gender discrimination. Neither SEPTA nor the EEOC received notice and, as a result, SEPTA argues Ms. Titus-Williams' gender discrimination claim under Title VII is not within the scope of

4

her EEOC charge or the resulting investigation. SEPTA argues Ms. Titus-Williams' status as a *pro se* plaintiff does not excuse her from the need to exhaust her administrative remedies before seeking judicial review and dismissal with prejudice is appropriate because an opportunity to amend will be futile because she cannot cure her failure to exhaust. SEPTA askes we dismiss the Title VII gender discrimination claim with prejudice because Ms. Titus-Williams cannot cure her failure to exhaust the claim thus any amendment would be futile.[26]

Ms. Titus-Williams disagrees. She attaches to her complaint her Charge of Discrimination filed with the EEOC.[27] Ms. Titus-Williams concedes she did not check the box for gender discrimination on the Charge of Discrimination form.[28] In the area to provide additional information to the EEOC reported only "I worked for [SEPTA] as a Bus Operator from December 2000 until my termination on July 9, 2018. I am a disabled individual. I had back surgery in or around July 4, 2018. I was told by [SEPTA] to report to work on or about July 9, 2018. I needed another year to recover. I believe that I have been discriminated against based on the Americans With Disabilities Act of 1990 (ADA) as amended."[29]

Ms. Titus-Williams argues her failure to "check the box" for sex discrimination on the EEOC Charge is not dispositive. Ms. Titus-Williams alleges SEPTA denied an accommodation for light duty, when a male under similar circumstances received her desired accommodation.[30] The allegation regarding disparate treatment is not pleaded in her complaint. She argues her gender discrimination claim is within the scope of her EEOC charge and "would have been covered had the EEOC conducted a reasonable investigation."[31] She suggests rather than investigating, the EEOC issued a Right-to-Sue letter "merely two days after it received" her Charge.[32] She argues we may still assume jurisdiction over this charge because gender discrimination is reasonably

5

within the scope of the original charge for disability discrimination and a reasonable investigation by the EEOC would have identified this new claim.[33]

Congress requires a claimant file timely charges with the EEOC and receive a notice of right to sue as a prerequisite to sue in federal court under Title VII.[34] In doing so, a claimant exhausts her administrative remedies and is now able to sue in federal court.[35] *Pro se* claimants must follow the rule of exhaustion before judicial review.[36]

**1. Ms. Titus-Williams did not allege facts of gender discrimination or mark the proper box in her Administrative Charge.**

We allow claimants to proceed with claims not included formally in the administrative charge if the facts in the charge offer enough information of the claim's existence to alert the EEOC.[37] We do not want to disadvantage claimants for poor EEOC investigations.[38] "After a charge is filed, 'the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination....'"[39] While the "mere failure' to "check a box" on an EEOC Charge "does not necessarily preclude a plaintiff from asserting a claim, ... it does prevent a plaintiff from 'greatly expand[ing] an investigation simply by alleging new and different facts when [s]he [is] contacted by the Commission following [her] charge."[40] This is so because the EEOC must give notice to an employer when a charge is filed against it and put the employee on notice of the claims likely to be filed against it.[41]

In *Hemphill*, plaintiff did not check the box for sex discrimination when filing her EEOC charge for race and age discrimination after being fired by her employer.[42] Ms. Hemphill incorporated "sufficient facts" notifying the EEOC she raised a sex discrimination claim by starting her description with "'I am a White female,'" which allowed the EEOC to interpret

6

"her charge to include a gender-based claim."[43] The EEOC then "investigated her claim and found it meritless," so she could sue as she properly exhausted her sex discrimination claim.[44]

Ms. Titus-Williams' administrative charge offered no possibility she wanted to pursue a gender discrimination claim. As in *Hemphill*, Ms. Titus-Williams did not check the box for sex discrimination when filing her EEOC charge.[45] Unlike *Hemphill*, the descriptive paragraph only discussed disability discrimination.[46] Ms. Titus-Williams' EEOC charge did not specifically state her gender as a woman in her Charge description or allege a similarly situated male received accommodations she desired but did not receive.

In *Watson*, the district court dismissed a retaliation claim where the claimant did not check the box for retaliation in the administrative charge, the charge did not reference retaliation, and plaintiff did not complain about retaliation in the description.[47] In *Nerosa*, the district court dismissed a claim for failure to exhaust because plaintiff did not check the proper box, did not reference the type of discrimination in the administrative charge, and did not allege protesting the specific type of discrimination.[48] Similar to *Nerosa* and *Watson*, Ms. Titus-Williams did not check the sex discrimination box and the brief description within her charge does not allege a single fact for the EEOC to find a gender discrimination claim could be within the scope of the charge.

### 2. A reasonable EEOC investigation would not have uncovered a gender discrimination claim.

We assume jurisdiction over a Title VII claim if "a reasonable investigation of the charge as filed would have encompassed the sex discrimination claims."[49] In *Ostapowicz*, women factory workers brought a Title VII class action claiming management never promoted them to first class machine operators, intimidated them, and disproportionately fired them when layoffs occurred during which "the company was generally obliged to lay off second class operators before first class operators" notwithstanding seniority at the company.[50] The employee union filed an EEOC

7

charge "alleging that the company maintained sex-segregated job classifications which resulted in women being laid off while men with less seniority were both retained and recalled from layoffs before women."[51] The union attached a "grievance from a woman in the shipping department" resulting in the EEOC investigating and limiting their findings to the shipping department.[52] Ms. Ostapowicz, who worked in the machine shop division, filed two more gender discrimination charges before the "EEOC conciliation efforts began," but when the EEOC finally sent her the right to sue letter, it only referenced the first of the three administrative charges.[53] The union and Ms. Ostapowicz filed three separate charges, each "alleging specific instances" of gender discrimination "before suit was instituted and before EEOC's role had been terminated."[54] Our Court of Appeals held "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."[55] It further held the "additional charges filed during the pendency of the administrative proceedings may fairly be considered explanations of the original charge and growing out of it" and, as a result, upheld the district court's jurisdiction and reaffirmed "it encompassed all the instances of sex discrimination."[56]

Finding the EEOC would have uncovered a sex discrimination claim during a "reasonable investigation does not itself meet the standard of *Ostapowicz*," but "merely rebuts the presumption" the investigation's scope is "'what can reasonably be expected to grow out of the charge of discrimination.'"[57] The sex discrimination claims must also be "within the scope of the charge filed with the EEOC."[58]

In *Antol*, Mr. Antol asserted a disability claim in his EEOC charge, but did not state a gender discrimination claim or check the sex discrimination box after the employer hired two females for jobs he sought.[59] He argued the EEOC should have discovered the gender

8

discrimination claim during their investigation because of the gender of the employees who received the jobs he wanted and the history of women getting those positions.[60] Our Court of Appeals held the details of his discrimination charge based on disability "do not fairly encompass a claim for gender discrimination merely because investigation would reveal [Mr.] Antol is a man and the two employees" who obtained the jobs he sought are women.[61] Our Court of Appeals stated the investigation properly focused on disability discrimination so neither the agency nor the EEOC received notice of his gender discrimination claim.[62]

Similarly, in *Kirman*, the fact the EEOC's investigation could potentially reveal the employer gave females the accommodation plaintiff desired is "insufficient to put the EEOC on notice that Plaintiff was also claiming gender discrimination" in addition to disability discrimination.[63] Mr. Kirman did not exhaust his administrative remedies for his gender discrimination claim when he failed to "put the EEOC on notice that his claim included gender discrimination" by not checking the proper box or even claiming other similarly situated people of another gender got the accommodation he requested.[64]

As in *Antol* and *Kirman*, Ms. Titus-Williams asserted a disability claim in her EEOC charge, but did not state a gender discrimination claim or check the sex discrimination box.[65] As in *Antol* and *Kirman*, the fact SEPTA accommodated a similarly situated male bus driver does "not fairly encompass a claim for gender discrimination merely because" the investigation would find the person is another gender.[66] Ms. Titus-Williams did not plead a similarly situated male got accommodations she did not in the complaint or administrative charge. As in *Kirman* and *Antol*, Ms. Titus-Williams plead no facts of how a gender discrimination claim is likely to arise from an EEOC investigation into her disability discrimination claim.

9

Based on the complaint and the limited facts in the EEOC charge, a reasonable EEOC investigation would not have uncovered gender discrimination. Ms. Titus-Williams did not exhaust her administrative remedies for her gender discrimination claim. Ms. Titus-Williams cannot cure this defect making any amendment futile. We dismiss her Title VII gender discrimination claim with prejudice.

### B. Ms. Titus-Williams did not plead a Family Medical Leave Act claim.

SEPTA moves to dismiss Ms. Titus-Williams' FMLA claim because she fails to plead facts to "support a viable claim under the FMLA"[67] either under an interference or retaliation theory. SEPTA argues Ms. Titus-Williams simply "offered a vague and unsupported statement suggesting her rights were violated" by identifying the "FMLA Law Act" as the basis of her claim.[68] SEPTA argues it is unclear whether Ms. Titus-Williams is "even bringing an FMLA claim" and, if she is, fails to support it with any factual allegations including her entitlement to FMLA leave, or SEPTA interfered with her FMLA rights, restrained her from or denied her rights under the FMLA. [69] In its reply brief, SEPTA argues Ms. Titus-Williams fails to "address" whether she worked at least 1,250 hours of service within the last twelve month period to be entitled to FMLA leave or whether she exhausted her FMLA leave before her termination.[70]

Ms. Titus-Williams argues SEPTA mischaracterizes her allegations and her burden at the motion to dismiss stage. Ms. Titus-Williams maintains her *pro se* complaint "establishes a cognizable FMLA interference and retaliation claim against Defendants."[71] She identifies the elements of both an FMLA interference and retaliation claim, suggesting she intends to bring claims under both theories.

Under the FMLA, an "eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" for, *inter alia,* a "serious health condition that makes the

10

employee unable to perform the functions of the position of such employee."[72] An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the FMLA or "discharge or in any manner discriminate against any individual for opposing any practice made unlawful by this subchapter."[73] The first provision is often referred to as interference while the second is generally understood as retaliation.[74] The Department of Labor interprets these provisions as forbidding an employer from firing an employee for exercising, or trying to exercise, her rights under the FMLA as well as barring an employer from treating FMLA leave as "as a negative factor in employment actions such as hiring, promotions or disciplinary actions."[75]

In *Erdman v. Nationwide Insurance Co.*, our Court of Appeals held terminating an employee for a valid FMLA request may constitute interference with the employee's FMLA rights as well as retaliation against the employee.[76] But our Court of Appeals recently made a distinction between employees who are terminated before taking leave and those terminated after leave is approved and taken. In *Capps v. Mondelez Global, LLC*, our Court of Appeals affirmed summary judgment in favor of the employer in an FMLA interference claim.[77] Our Court of Appeals rejected the plaintiff employee's reliance on *Erdman* the facts supported both an FMLA retaliation and interference claim. The court distinguished *Erdman* because there the employee "'requested FMLA leave but was fired before the leave was scheduled to begin,' *i.e.* before the employee actually took the leave. Unlike Capps' case, the issue in *Erdman* was whether an employee must *take* FMLA leave to prove a *retaliation* claim where the employee requested FMLA leave but was fired before actually using the leave. It is not surprising that such facts may constitute an interference claim and a retaliation claim since the employee was fired *before* receiving the benefit of actually taking the leave or being reinstated to the same position following the leave. Here, of

11

course, Capps requested the FMLA leave in question, that request was approved, Capps took the leave in question, and Capps was reinstated to the same or equivalent position after taking the approved leave."[78]

To plead an FMLA retaliation claim, Ms. Titus-Williams must allege "(1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights."[79]

To plead an FMLA interference claim, Ms. Titus-Williams must allege "(1) she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of … her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which … she was entitled under the FMLA."[80]

Ms. Titus-Williams fails to plead facts to support the elements of either an FMLA retaliation or interference claim. We gather from the documents attached to her complaint SEPTA considered her an eligible employee under the FMLA because both of Ms. Weisensee's July 2, 2018 letters approved FMLA leave from January 22, 2018 until January 21, 2018. It is at least plausible, on a motion to dismiss standard, Ms. Titus-Williams was eligible for FMLA leave, SEPTA is subject to FMLA leave, and Ms. Titus-Williams gave notice of her intent to take FMLA because SEPTA approved FMLA. We also consider Director Schirg's July 9, 2018 letter terminating Ms. Titus-Williams for having exhausted all sick leave. But we have no allegation SEPTA terminated her because she invoked her FMLA rights to satisfy the third element of an FMLA retaliation claim and we have no allegation SEPTA denied her entitled benefits to support an FMLA interference claim. Indeed, Ms. Titus-Williams' complaint alleges she had back surgery

12

on July 3, 2018 but SEPTA told her to report to work on July 9, 2018 despite needing another year to recover.

While we may guess at what occurred here to fill in the gaps from the inconsistencies in SEPTA's correspondence to Ms. Titus-Williams and its possibly inconsistent conduct, we cannot do so under Federal Rule of Civil Procedure 8. Rule 8 requires, *inter alia*, "a short and plain statement of the claim showing the pleader is entitled to relief."[81] The purpose of the rule is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests."[82] "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that ... she not only provide 'fair notice,' but also the 'grounds' on which the claim rests."[83]

Mindful of our Court of Appeals' guidance for *pro se* employees, we dismiss Ms. Titus-Williams' FMLA claim but grant her leave to amend her complaint to allege facts sufficient to support an FMLA interference and/or retaliation claim.

## III. Conclusion

Ms. Titus-Williams did not identify any basis for the EEOC to investigate a gender discrimination claim. We must dismiss this claim for failure to exhaust this claim before the administrative agency and deny her leave to amend her claim for Title VII gender discrimination as futile. Ms. Titus-Williams presently fails to state a claim for FMLA interference and/or retaliation but we grant her leave to file an amended complaint. We remind Ms. Titus- Williams SEPTA withdrew its motion to dismiss her claim under the Americans with Disabilities Act claim which will proceed even without an amendment to plead a FMLA claim.

---

[1] ECF Doc. No. 1 at 3. We use the pagination assigned by the CM/ECF docketing system.

[2] *See* Ms. Titus-Williams' brief in opposition to SEPTA's Motion to dismiss. ECF Doc. No. 9 at 4. Ms. Titus-Williams provides us with additional facts in her opposition to SEPTA's Motion not contained in her complaint.

13

[3] ECF Doc. No. 9 at 3. We use the pagination assigned by the CM/ECF docketing system.

[4] 29 U.S.C. § 2601 *et seq.*

[5] ECF Doc. No. 1 at 11.

[6] ECF Doc. No. 9 at 3. Again, Ms. Titus-Williams provides us with this fact in her brief in opposition to SEPTA's Motion and is not contained in her complaint.

[7] *Id.* at 13, 15.

[8] *Id.* at 13.

[9] *Id.* at 15.

[10] *Id.*

[11] ECF Doc. No. 1 at 16.

[12] *Id.*

[13] Compare ECF Doc. No. 1 at 16 with 17.

[14] *See* ECF Doc. No. 1 at 16, 17.

[15] *Id.* at 3, 6.

[16] *Id.* at 18.

[17] There is a mistake in the Complaint with the date written as April 30, 2018, but this could not be the case because Ms. Titus-Williams got fired from SEPTA on July 9, 2018. The correct date must be April 30, 2019.

[18] ECF Doc. No. 1 at 4.

[19] *Id.* at 20.

[20] *Id.* at 6.

[21] *Id.*

[22] *Id.* at 8.

[23] When determining if a complaint satisfies Fed. R. Civ. P. 8, we must consider "all well-plead allegations of the complaint . . . as true." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009). In deciding motions to dismiss, we consider the complaint allegations, attached documents,

14

and materials of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Documents forming the basis of a claim may be considered authentic. *See Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). Plaintiff must only plead enough facts to create "a reasonable expectation that discovery will reveal evidence" demonstrating they are eligible for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal citations omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Claims must be viewed "in the light most favorable to the plaintiffs, and all inferences must be drawn in [their] favor." *Aubrey v. City of Bethlehem, Fire Dep't*, 466 F. App'x 88, 91 (3d Cir. 2012) (quoting *McTernan*, 577 F.3d at 526). We are not required to accept legal conclusions in the complaint and plaintiff is not mandated to "establish the elements of a prima facie case," even after *Twombly*. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11, 213 (2009); *see Bell Atl. Corp.*, 550 U.S. at 545. It is not necessary to "plead a *prima facie* case of discrimination" to overcome a motion to dismiss. *Huggins v. Coatesville Area Sch. Dist.*, 2008 WL 4072801, at *5 (E.D. Pa. Aug. 27, 2008). The difference in legal proficiency between professional legal counsel and *pro se* litigants necessitates us holding a *pro se* plaintiff's complaint to a more flexible standard than one drafted by a legal professional. *See Haines v. Kerner*, 404 U.S. 519, 520 (2007).

[24] SEPTA initially moved to dismiss the complaint for three reasons: (1) failure to exhaust administrative remedies on her Title VII gender based discrimination claim; (2) failure to timely exhaust administrative remedies on her ADA claim; and (3) failure to state a claim under the FMLA. ECF Doc. No. 7. On January 16, 2020, SEPTA advised after review of Ms. Titus-Williams' EEOC charge, it withdraws the second basis for its motion to dismiss – failure to timely exhaust an ADA and Title VII claim. ECF Doc. No. 11.

[25] ECF Doc. No. 7 at 4-6. We use the pagination assigned by the CM/ECF docketing system.

[26] *Id.* at 6 n.3.

[27] ECF Doc. No. 1 at 6.

[28] ECF Doc. No. 9 at 11.

[29] ECF Doc. No. 1 at 6.

[30] ECF Doc. No. 9 at P. 12.

[31] ECF Doc. No. 9 at 12.

[32] *Id.*

[33] *Id.* at 11-12.

[34] *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013).

[35] *See* 42 U.S.C. § 2000e–5(e)(1) (2019); *see also Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976).

[36] *Smith v. Soc. Sec. Admin.*, 54 F. Supp. 451, 454 (E.D. Pa. June 29, 1999).

[37] *See Hicks*, 572 F.2d at 963.

[38] *See id.* at 966.

[39] *Barzanty*, 361 F. App'x at 414 (quoting *Hicks*, 572 F.2d at 966).

[40] *Id.* (quoting *Hicks*, 572 F.2d at 967).

[41] *Id.* (citing 42 U.S.C. §§ 2000e-5(b), (e)(1)).

[42] *Hemphill*, 2016 WL 699502, at *1.

[43] *Id.* at *2.

[44] *Id.*

[45] *Id.*; *see* ECF Doc. No. 1 at 6.

[46] ECF Doc. No. 1 at 6.

[47] *Watson v. Southeastern Pa. Transp. Auth.*, No. 96-1002, 1997 WL 560181, at 7* (E.D. Pa. Aug. 28, 1997).

[48] *Nerosa v. Sotrecast Merch. Corp.*, No. 02-440, 2002 WL 1998181, at *5 (E.D. Pa. Aug. 28, 2002).

[49] *Id.* at 967.

[50] *Ostapowicz*, 541 F.2d at 397.

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Id.* at 399.

[55] *Id.* at 398-99.

[56] *Id.* at 399.

[57] *Hicks*, 572 F.2d at 967(quoting *Ostapowicz*, 541 F.2d at 398-99).

[58] *Hicks*, 572 F.2d at 967.

[59] *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996).

[60] *Id.*

[61] *Id.*

[62] *Id.* at 1296.

[63] *Kirman v. United Parcel Serv. Inc.*, No. 15-2357, 2015 WL 7720494, at *8 (D.N.J. Nov. 30, 2015).

[64] *Id.*

[65] *Antol*, 82 F.3d at 1295; *Kirman*, 2015 WL 7720494, at *8; ECF Doc. No. 1 at 6.

[66] *Antol*, 82 F.3d at 1296.

[67] ECF Doc. No. 7 at 12.

[68] ECF Doc. No. 1 at 3.

[69] ECF Doc. No. 7 at 13.

[70] ECF Doc. No. 10 at 7. We use the pagination assigned by the CM/ECF docketing system.

[71] *Id.* at 8.

[72] 29 U.S.C. § 2612(a)(1)(D).

[73] 29 U.S.C. § 2615(a)(1), (2).

[74] *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005).

[75] 29 C.F.R. § 825.220(c) (2020).

[76] *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009).

[77] *Capps v. Mondelez Global, LLC,* 847 F.3d 144, 151-56 (3d Cir. 2017).

[78] *Id.* at 156 n.11 (internal citations omitted).

[79] *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012)).

[80] *Id.* at 191-92.

[81] Fed. R. Civ. P. 8(a)(2).

[82] *Peay v. Sager*, No. 19-1131, 2020 WL 362774, at * 2 (3d Cir. Jan. 22, 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[83] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (citing *Twombly*, 550 U.S. 555, n. 3).